Automobile Insurance Company Defendant Appley. I am Justice Aurelia Paczynski. Joining me are my colleagues, Justice Michael Hyman and Justice Celia Gamrath. Normally in these cases, we give each side about 10-15 minutes. Try not to interrupt you unless we really need to. We ask you to start with your strongest point and work your way down. If you have any questions, please feel free to ask them. Keep in mind that we have read the briefs, the case law, and the record involved in this case, so you can skip over that unless it's essential to your presentation. With that, I'd like the attorney for the appellant to introduce himself, please. Ken Simpson on behalf of Nancy Becker-Othman. Mr. Simpson, great. And Appley? Michael Rieses from Amundsen Davis for Appley State Farm Mutual Automobile Insurance Company. Excellent. Mr. Rieses, great. Fine. In that case, Mr. Simpson, would you please start your case? I'd be happy to. Thanks for granting oral argument on this one. I think it's warranted under these facts. Rather than get into the nuts and bolts of this thing, which I think the court's well familiar with because it's well explained in the brief, I want to just pose this question, which is, how is the system supposed to work, and how does it really work? And I think there's a big disconnect between that that becomes really obvious here that this case hopes to address. The first thing that seems to be often forgotten is just the simple fact that Nancy Becker-Othman went to State Farm and purchased insurance coverage, underinsured insurance coverage. She paid them money. They cashed the check. She chose to entrust them in exchange for an insurance policy or contract of adhesion to get that kind of coverage. And State Farm didn't say, we don't want to take your money. We don't want to give you this kind of coverage. They said, no, we would be happy to take your money and engage in this contractual relationship. And that's quite different than what happened with Ms. Dang's insurance company, which, of course, my client had no relationship with at all. But in any event, what happened when this case first happened was Nancy Becker-Othman filed suit against a tortfeasor, Ms. Dang, who obviously had a different carrier. They had a minimal policy that was eventually paid after a certain discovery, records were discovered, debts were taken. And then an insurance company representing Ms. Dang says, based on all this, we think there is liability on our insured and we are going to pay our policy limits, which, of course, State Farm was entitled to at that point to have a credit for. And also right away when the case first came in, I gave notice, we gave notice to State Farm and said, hey, listen, we have a potential underinsured claim here. We want you to know if you want to participate in this or do anything, but let us get first deal with Ms. Dang's carrier. So that's what happened. And once the policy was paid, then now I'm in a situation where I have all my clients' records, all my clients' bills, all her reports from her doctors. I have everything that's important to try to get to State Farm. And I send it over to them with a nice little packet with a bow on it. And I say, we demand the policy limits or the balance of the policy under the underinsured coverage. We give you 30 days to resolve that. OK, now what is the business model of State Farm and presumably every other insurance company in the nation? OK, it's to decide who's at fault and to put a total value on that loss. That's bless you. That is the obligation of an insurance company. And unfortunately, to this day, they've never done either of those things. They've never put a total value on this and they've never they've never said who was at fault inside their own files. They did, but they absolutely refused to say to us that they think Ms. Dang was at fault because under 919.50, that means they have to do things once liability has been determined and they don't want to comply with 919.50. And here's the thing. It's an adhesion contract. And if you go through any insurance policy that's out there, there's a long list of what the insured has to do. There's nothing in there about what the insurance company has to do. And quite reasonably, the Illinois insurance, the Illinois legislature and the Illinois Department of Insurance recognize that. And what did they do to try to level the playing field? One thing they did is they passed 154.6 and outlined what are improper claims practices. The other thing they did is they passed the rule 919.50 that says, hey, this is an obligation on first party claims. You've got to when you once you get that claim, you've got to then decide liability. You've got to. And if you're not going to pay the whole thing, you've got to decide total damages. And if you're not going to pay it, you need to tell us why in writing. And you can't just be an adjuster saying, well, I disagree with the doctor, but I have no medical degree. Or can't just be like, well, we don't agree. So we need to go to arbitration. OK, they need to come up with if they need to, they need to do their duty as as insurance companies are obligated to do, which is decide who's at fault and decide what the total damages are. Something that's never happened. Is there a time frame in which they have to do it? Well, no, I mean, unfortunately, Illinois law says it has to be reasonable. You know, that's where you get into this thing is, is it vexatious and unreasonable? I would say this. I mean, there are situations where three years is reasonable, but that's usually in a situation where the case starts and nobody has all the records and none of the depths have been taken. Keep in mind, in an underinsured situation, we've already been to court. I have all the records. We've already we've I have all the bills. My clients usually is done treating at that point. So a 30 days position at that point is not unreasonable. And I would say this. If I send a demand out and somebody said to me, you know what? We'd really like to take this treater because even though you gave them the records, we kind of want to know what happens. That's fine. But 21 months of silence and saying we don't want to do any discovery. We just want to like string you along for as many years as we can and give ourself a free loan. And, you know, that response is basically unacceptable and it's not how the system is supposed to work. And, you know, keep in mind, they claim and Thomas the Tomasello case, which is my case, obviously, in that case, what happened is it's a State Farm case. And it says the question became, is did they ever trigger arbitration? And in order to do it under the terms of their own policy, there has to be no agreement. Well, if you have no position on liability, no position on total damages, no expert challenging any of the causation that's in the proof of loss, then how is it that there is no agreement? And so, you know, at that point under 919.5, oh, they have to pay the undisputed amount 30 days. So, you know, again, that's why under 919. But 919, where's the private right of action? Well, so here's what I'd say. First of all, I'm asking for a private right of action. But there isn't anything that allows it, is there? Well, first of all, that's for the 7th Circuit Court of Appeals told me that they weren't going to recognize a private right of action under that. And they said that the reason for that was really obvious, which was that we had an adequate remedy, not a remedy, an adequate remedy through the Illinois Department of Insurance that had the exclusive right to enforce violations of 154.6 and 919.50. And I guess the question, there's a few things to know about that. One is in 54 years since 154.6 got enacted, it's never been enforced once. OK, that's the first problem. The second problem is, is that when State Farm wouldn't do anything, Nancy Becker-Othman sent a consumer complaint, which is what Judge Easterbrook suggested was her adequate remedy in Bonucci and over to the Department of Insurance. And what they said is what they always say, which is something along the lines of we're not getting involved because there's a lawsuit. So in other words, they've got the exclusive right under the law to enforce these two provisions. And then they're turning around and saying, because you're litigating, we're not going to get involved. But I understand what you're saying. I read the briefs. But isn't the relief for that to go to the legislature? That isn't for the court. The court, we have to follow what we have to follow Supreme Court rules. We have to follow precedent. And if the system isn't working, aren't you saying, then why do you go to the legislature? We can't legislate. We can't tell. We can't give a precedent of this. It would be unprecedented, it seems. And there isn't any, I don't think there's support for your position, unless I missed something. But what I'm saying is there's other ways that you can. Well, you know, for others. Yeah. So in the other Bernucci case, one of the things I did was I think the reason the Department of Insurance doesn't do anything is regulatory capture. And I think it's pretty clear that they have no interest in getting involved in these cases. But the other part of this is, is that there are cases where in Creighton, which is a first district case and it was on a tax issue. But there are cases where the basically what the courts have said is that the legislature expressed an intent or the Department of Insurance expresses intent about how these situations have to get handled. And because an adequate remedy isn't being provided, we're going to imply a private right action. Now, it's become increasingly hard over the last few years to get a mandamus relief like I tried to do and Judge Mitchell said no to in Bernucci. But the reality of it is there still are cases out there where there's an implied right action. And I guess the point of this is this. I mean, is there possible that there would be a legislative remedy? Yes. But the point of the matter is, is somebody needs to if it would certainly be if the court's going to say we're going to shut you down and you don't have a remedy that would put anybody that would go to their legislature and say you need to change the law, a stronger argument. Because they would be able to say, well, the courts aren't recognizing a private right action. I don't think that if the legislature was asked whether or not they wanted insureds like Miss Becker-Offman doing battle with a $250 billion company like State Farm, I don't think they would they would want her to have this the power to privately enforce these. And particularly because this is an adhesion contract that she didn't have anything to do with right to right. And so there's nothing fair about this relationship unless she gets that protection. And I would also point out, too, you know, there is no Kramer from the Supreme Court said that there's no separate cause of action for good faith and fair dealing. However, it is a covenant that applies to insurance policies, which are contracts. And Boyle's made that pretty clear. And the other side is not really address that. But the slate case out of the first district clearly embraced that. So, you know, there's a lot of different reasons why this should be the you know, in my estimation, the priest, the Supreme Court has never asked what is the presupposed cause of action under 155. And I would suggest that partial breach conversion and then the 155 language of vexatious unreasonable delay is exactly what is contemplated. Are there any are there any cases, not from the Supreme Court, but otherwise, with regard to partial breach doctrine in an insurance? Well, there's the Supreme Court case, PMK, that was decided three years ago, but it's it's not in a remotely same area of the law. I mean, it's it's not an insurance case, right? It's just that that's why I asked an insurance information, a partial breach. Is there are there any cases you're aware of that that theory has been raised? I'm not there. I am not aware of any. And I'm pretty much right here. I mean, yeah, I mean, let me put it to this way. That issue has been raised by other cases I have pending in Cook County right now. So, you know, you guys may see it sooner than later. I mean, at the very least, I think this is an unresolved, important issue of the law. Right. In other words, at the end of the day, Becker-Othman got her seventy thousand dollars two years late, but she did get paid. The reality of it is, is how are we going to motivate insurance companies to act in good faith up front instead of them being able to take out a free seventy thousand dollar loan for three or four years? And I've got cases. I got another one right now where the free loan that Hartford gave itself was six hundred thousand dollars. So these amounts are not always small and the time periods are not always short. And the reality of it is, is if we create a system that incentivizes State Farm to do the right thing, they'll do the right thing. Well, but in this case, I mean, we do have a expert that they retained who comes out with four different opinions. And at the end says, well, yeah, maybe the surgery would be all right. Well, you agree you read more importance into that than I do. But here's the important point I think you should think about with respect to him. All four of his opinions, contrary to Dr. Younger, who gave an evidence stop and said that she needed immediate left shoulder surgery as a result of the accident. All four opinions of Hutchinson all said the same thing, which is I don't think that shoulder surgery is related to this accident. In other words, he can he can tweak some words here or there, but the guts of his opinion never changes. And the reality of it was, is they just didn't want to pay and they were using him as an excuse. And I would say this, too. OK, so you want to use them as an excuse. Why do you hide them him from me until after I file this lawsuit? What's the big secret? Right. I mean, clearly, they weren't trying to to be above board about this. And, you know, they could have disclosed them. They paid him money. And now they hired him like a year and a half after after we made our underinsured claim. But eventually they do hire him and they never disclose him before they decide to pay the policy limits. So, you know, the bottom line is, is that there are a lot of people that get deprived of a lot of money because the system doesn't work the way the system should work. And, you know, somebody needs to do something about this. And hopefully this is the right vehicle to do it. I don't think the only way I think you told the Illinois legislature, I sent them a FOIA request under 154.6. I said in the last 54 years, tell me all the times you've enforced this statute. And they said zero, zero, none, none, none. I don't think the legislature knows that they passed 154.567 and eight with all these serious remedies available. And you've got a Department of Insurance because a regulatory capture that is choosing not to not to exercise that at all. And in the other cases, the Department of Insurance is claiming, well, we're doing it under 132. But 132 has a provision that says you need to pursue the greatest penalties. And clearly 154.8 are greater penalties than 132. But that information you just gave us is not in the record. So I don't know. Well, it's not in the record. So, I mean, that's a problem. So, I mean, you know, you make an argument, but we have to go with the four corners of this case with the precedent. And you're trying to fix what you perceive as a problem. But, again, we are left with what the courts have said. And she did get paid. The question is, is 155 applicable here? And is there a private right of action? And those are the issues we have to decide. Yeah. So, you know, I don't know how much you can rely on things on the Internet, but I don't think it's beyond. I don't think we can. Well, I guess. I guess. No, I'll answer that. We go on the record. And we don't go outside that record. Justice Posner used to be famous for going online and taking pictures. We don't do that. Don't go online. We don't check anything on that. That would be improper. Well, one thing that is in the brief is a reference to the Department of Insurance's website where they describe their own version of the consumer complaint process. And that is in the briefs. And what they say is. We can take account. Yeah. So what they say in there is we're not going to determine factual disputes between the insured and the insurance company. So that means anytime an insurance company says I didn't do anything wrong. End of story. No possible remedy whatsoever. And, you know, there's nothing in the statute or in the rule that says anything about that anybody's supposed to resolve issues of violations of 154.6 or 919.50 without making a factual determination. It's simply impossible. And, you know, Illinois has gotten a reputation for being weak when it comes to, you know, bad faith. And, you know, maybe that's because there's a lot of insurance companies based out of Illinois. I don't know. But I can tell you this. These rules and are that the legislature passed and that the Illinois Department of Insurance and, you know, enacted pursuant to their rulemaking authority, they're real rules. And if they get followed or anybody can enforce them or anybody chooses to enforce them, we got a whole new game in town. So, you know, I think that I think that there is good reason that the court should find an implied right of action. You know, I guess the part really here is, you know, when Justice Mitchell said that he wasn't going to recognize mandamus, I got the sense that he felt that wasn't the court's role to tell somebody else how to do their job. Right. He wasn't going to have the courts tell the Department of Insurance how to do their job. But this is really kind of a different request. We're not asking for we're asking for a private right of enforcement, which takes the Department of Insurance completely out of it. We go in and do the work that they won't do. And I think there's something refreshing about that. And I think that the court should feel more comfortable doing that than mandamus, where you get yourself a little bit into this of like, how much are we going to overlook an administrative agency? So I think that for all these reasons, the court should grant a finding. I mean, I would say this, you know, if you feel the record is not sufficiently developed on this implied right of action. I got more cases coming, you know, and I keep learning new facts about this and how it's been responded to. I, you know, you know, maybe you don't need to get to that issue. I think it's warranted on these facts. But when I wrote the briefs in this case and litigated this case, I didn't know as much as I know now. So, you know, that is one consideration. I would say this, too. I mean, one of the things that was said in Tomasello was this question of whether 155 damage should be should be litigated at the arbitration level. And that's still an open question right now. You know, and I think it should be. But there really hasn't. Basically, what that court opinion said from the first district is, you know, put it in front of the arbiters, see what they do. And then we'll take a look at it after they've ruled. Right. In other words, we want a second look, not a first look. And I get it. So it's before Judge Lawler right now. We'll see. But those are some things I think the court should think about. I would say this. If I called up State Farm and I and this is not just substandard carriers. This is all carriers acting this way. And if I if I call in for anybody that does what I do and is frustrated every day and they can't explain what's going on behind the scenes to judges because they're not aware. One of the great things about this case is I deposed all the adjusters in this case. And you got to see in real time how the intelligence level of that adjustment. And basically what they said is we have no idea what the bad faith laws in Illinois are. We have none. We have no idea at all. And we don't even know how we put certain numbers into our thing. And we don't we don't know how we did anything. We don't even know what our policies and procedures are. And the thing is, is that that's a culture. That's a culture choice that the insurance industry has made as an excuse to not have to pay legitimate claims timely. And, you know, I think, you know, sometimes courts need to take bold steps. I'm certainly Brown versus Board of Education was a bold one. But, you know, if you give plaintiffs or insureds the private right to action under these two statute, it is going to change how many cases the insurance companies can afford to take the court and delay and fight like this. In other words, I guess what I'm making is a judicial efficiency argument. We want to more efficiently dispose of cases fairly. That's a great way to get to that result. So, so, so I appreciate that argument, but getting back to the case at hand. The law is clear that a 155 action cannot stand on its own. You did not prevail on the contract action. Do you agree that? No, no. So I'd say one, I'd say two things about that. One is I did provide prevail on the partial breach in the exact way that partial breach is defined. When they pay the policy, the breach stops. But up until that point, and the Caligno case says that you can't erase the partial breach by by paying the policy. And there's a lot of case law. He says it too. There's a lot of case law out there that says that that the breach is the breach. So I guess I disagree about that. As far as 155, you know what? I think 155. I think judge. Don't go back to your last point has held on. Oh, Mickey. Those came pre Kramer and they came pre moles and crowd tool. Right? Yeah. So I don't think that that Kramer was overruled. Caligno or McGee. I just don't think that I don't think you can reach that conclusion on that. As far as moles goes. And most I don't think most was being critical of those opinions. But the important fact in moles was just as Van Tine correctly recognize that the unique fact in moles was the fact that the insured in that case had signed a written release in exchange for getting paid their underinsured benefits. State farm in this case came to me and said, we'll give you the $70,000. But we want you to release all of your bad face claims against them. And I said, no, we're not doing that. And then they said, oh, by the way, here's the money. Right. And the reason they wouldn't do that was because one, it doesn't say it in the policy. But to all policies like that one have to be approved by the Department of Insurance. And the Department of Insurance would never put an insured in a situation where they have to waive their bad faith rights in order to get paid. So I think that all of those circumstances support 155. You know, Justice Posner said in Hennessy Hensley that that this is a remedy for a partial breach or a breach of contract. And I believe that was the correct statement. And I think Kramer embraces that, which is that it's a remedy for a presupposed cause of action. And so, you know, based on that, when when when justice or Judge Mullen says to me that you need to plead the 155 count separately. OK. In other words, he dismisses my initial complaint where it's a remedy. And he says, no, you got to cause action. This needs to be a separate cause of action. So now I'm in the impossible situation is, do I do I make a stand for the appellate court and tell him, judge, you're wrong and I'm not going to do it? I don't want to get to issue on this issue. Or do I abide by the advice given to me by Judge Mullen where he says 155 is a separate cause of action? I was in a no win situation and I hope I didn't make the wrong decision for my client. But, you know, that was that's how I got there. But I'm I think 155, you know, is is is it's the presupposed cause of action in this case is threefold. A partial breach under the recent Supreme Court case, admittedly not an insurance case. The conversion, which I think actually is right on point when somebody basically says we're going to keep your seventy thousand dollars for a few years and collect interest on it. And because you think an insurance company would would if the if the plaintiff was stealing seventy thousand dollars from him for two or three years would sit back and just say, oh, that's fine. I mean, you know, the reality of it is an enormous amount of money is being made on this on this piece. The fact that these payments are not being made and they're investing the plaintiff's money in all these money market accounts and investment funds. I mean, a substantial part of insurance companies income, you can just look it up, is based upon their investment income. And that's how they get all this money is they don't pay these underinsured claims for four or five, however many years. And, you know, it's too bad. So hopefully. And then the last thing is vexatious and unreasonable delay. But all of those, I think, are legitimate presupposed cause of action. One thing I would note, I filed a PLA in the Bernucci case on the Mandamus one that Judge Mitchell had. And one of the things I said to them in that is you need to tell us what this presupposed cause of action is. Right. And they denied the PLA. Obviously, I was under Mandamus. But, you know, Kramer's a long time ago. I mean, it's twenty nine years ago. If there was ever a situation where it'd be really nice for the Supreme Court to weigh in and say, hey, listen, we're going to take a fresh look at this after 30 years. I think this would be it. But, you know, the insurance companies are happy to keep things keep happening the way they are. And, you know, until I'm told no by the appellate courts in Illinois, I'm going to at least continue to explore these issues because I think they're unresolved. And, you know, and they need to be resolved because it really gets down to did the legislature pass 154.5 and say, you know what? You know, let me just go back. Your breach of contract action was dismissed. Correct. Well, he granted summary judgment. Well, OK. So but he said no breach of contract. So you're arguing to us that it was a partial breach and therefore the 155 should survive. Judge Mullins said you lose. You didn't prevail on your breach of contract. So you don't get those extra contractual remedies of 155. So I don't I don't think that's what he said. What he said is he was granting summary judgment. I got past the 2619 and the 2615 motion breach of contract. But you still lost your breach of contract. So if you don't prevail in all or in part on the underlying action, which is the action on the policy, the breach of contract, you can't get 155. So you would have to prevail of a partial breach. Right. I did prevail on a partial breach. I absolutely did. Well, you think you did. But Judge Mullins said you didn't correct. Well, he's he's wrong. I mean, all I can say is the evidence shows that there was a breach. I gave them every record in the world and then 21 months. They didn't pay. That's a breach of contract. Do you agree, though, that in order for us to allow you to move forward with 155, we would also have to find that you were successful on your underlying breach of contract action. Do you agree with that? Well, I mean, I guess the question he granted summary. Yes. Yeah. I mean, let me I'm not I'm not talking the thing with your question. I think it's a good one. But here's what I'd say. What he said was on the breach of contract. There was no issue material fact. Right. So I don't think you need to say there was a breach of contract. I think you need to say there's a material issue about whether there's a breach of contract. That's a little different. But, you know, I mean, at the end of the day, there can be a breach or there can't be a breach. What he's saying is there's just no evidence of a breach. And what I'm saying is there absolutely is when reasonable minds look at these circumstances and look at the partial breach doctrine. As explained by the Illinois. So is one of your. So are you asking us to reverse and send it back on 155 partial breach? Sure. I mean, have you asked for that? I mean, I know you might agree. Well, I mean, I don't know. I mean, I think I put it this way. I don't the partial breach doctrine, I guess. Here's the question that sort out there is, is there any practical difference? They're between a breach of contract and a partial breach of contract. And, you know, the reality of it is, in other words, in other words. But my question is, this may not be the right case because of the facts and the way it's been presented to us for that. I mean, again, we have to look at the case as a whole. I mean, I think it is the right case. And I mean, I think because here's what happens in this thing. Mr. Simpson, you're running out of time. I mean, you're actually over time. I talk a lot. I apologize. Oh, it's been very informational. But in the meantime, if you could wrap it up, that would be good. Yeah. You know, actually, I don't I don't have anything more to say, but I would if the if the court has any questions whatsoever about this, I think I've got a pretty good grasp. I'd like to take another shot at trying to address your concerns on this. But I do think I do think there is partial breach. I do think this is the right case. And I think that here's the other thing, too. They would have a stronger argument if they never paid. Right. Because then the then they could say they could fight about liability or the contracts never been breached. The fact that they eventually paid means that the original contract claim was valid. It was just breached for two and a half years or two years before they got around to paying it. So I think that that makes this ideal for a partial breach cause action. And I would encourage the court to look at conversion as well. I think it's right on point. There is, you know, all you got to do. And again, not a direct point kind of case with this situation. But if you look at the reasoning there, it's totally applicable. Final point. There's a case out there called Charter Properties versus Rockford Insurance. And I would say this. That case is on all fours with this one, except for one difference. That was property damage and this is personal injury. And I would submit that if you just change that concept, that that being property damage and this being personal injury, it's the exact same case. It's absolutely the exact same case. Thank you very much, Mr. Simpson. Any other questions for Mr. Simpson? Hearing none, Mr. Reese's, please begin. Thank you again. Mike Reese's on behalf of the defendant appellee. So I cannot match opposing counsel's passion for the argument he made today. But I'm going to start with the pleadings because the pleadings frame the issues. It's always the case. You look to the pleadings. Count one was predicated on breach of the insurance contract. Now, according to the plaintiff, State Farm did not adjust her claim, her underinsured motorist claim. Plaintiff has a special definition of what it means to adjust a claim. According to plaintiff, State Farm had to itemize each and every element of compensatory damages and provide a factual basis to the plaintiff before invoking arbitration. But to recover, plaintiff had to plead the specific terms of the policy that State Farm allegedly breached. There was no claim here ever for a conversion. It's a three count complaint. Count one breach of contract. That's where we're starting. The only policy the plaintiff ever states is that State Farm will pay compensatory damages recoverable from an underinsured motorist. Nothing in the policy, though, required State Farm to itemize potential damages before disagreeing with the plaintiff. Plaintiff's reliance on the compensatory damage language is simply misplaced. When there's a disagreement between the insured and State Farm on fault or damages, the parties resolve their dispute through arbitration pursuant to the policy and is required by the insurance code. Significantly, plaintiff never alleged that we refused to arbitrate. Far from refusing, State Farm acknowledged arbitration, acknowledged his demand, named an arbitrator, and only canceled arbitration when it paid the balance of the claim before suit. I was rather astonished to hear today that plaintiff thinks that we would have a better case if we never paid him. Enough said. Count one was based on a non-existent contractual duty to itemize his claim for compensatory damages before we could invoke arbitration. The case laws recognize that an insured cannot recover for breach of the insurance contract when no policy provision requires this type of adjustment. Opposing counsel has given you a well-rehearsed argument because he made the same argument in the Seventh Circuit on two cases, Bernacci and Lynn, in 2022 and 2024, and each time the Seventh Circuit rejected his theory. It's the same theory of adjustment here as in those cases. But if a policy imposes no timing obligation, what prevents an insurer from strategically delaying payment, which is what is being stated here? Excuse me? So there's no, are you saying that he has no remedy for this situation where you paid the full amount years later? So a couple of things. Number one, his theory here in count one is not unreasonable delay. It's a failure to adjust. Count one doesn't say anything about delay. It never uses the word delay. Let me read to you paragraph 42. State Farm's failure to adjust Becker-Othmann's claim resulted from the accident is a material breach of the contract. He has this theory that we can't simply disagree with him on whether or not the shoulder injuries related to the accident. He's saying that like a itemized jury verdict, State Farm has to assign a monetary value to each potential element of damages before invoking arbitration. That's what he alleged. He did not allege in count one that State Farm unreasonably delayed. The material breach, according to the plaintiff, is we did not itemize the elements of compensatory damages. The policy doesn't require that. The insurance code doesn't require it. The insurance rules and regulations that he relies on, which are not part of count one, don't require that. But to answer your question, Justice Simon, because it is an important question. So a couple of things. Let's talk about delay in the hypothetical that is not this case. First of all, if State Farm doesn't name an arbitrator or if State Farm frustrates the arbitration process because it won't agree to or it names an arbitrator, but it doesn't proceed to arbitrate. Then he's got to breach a contract claim. But that's not the claim he's making here. The claim he's making here is a mismatch for your hypothetical. That is important. But I'm going to take it a step further. Let's suppose that an insurance company hypothetically does something that is truly egregious. Well, if it meets the elements of an independent tort, not a 155, but an independent tort, he can bring the cause of action. If he's frustrated when there is an arbitrator, and what happens here was we never did get the third arbitrator. So we wound up agreeing to go with Judge Gomolinsky for arbitration. That took about a year. That was just to give you an idea of what was going on in the case. But the point I'm trying to make is that if there was something egregious, take it up with the arbitrator. The arbitrator can set the matter for arbitration. But that didn't happen here either because the settlement was reached before it ever got that far. One thing I want to correct also, and again, this may be before we get to the 155, and that is, you know, counsel has been talking about how State Farm had everything, you know, and they could have made a decision within 30 days of its policy limit time limit demand. Okay. We could not get the plaintiff's examination under oath to question the plaintiff. I know counsel is shaking his head, but it took 14 months.  The demand is made in December 2019, and we had the sworn statement proceed on February 8th of 2021. And then the case settled within about six months after that in August of 2021. I just want the court to understand that we didn't have the examination under oath before the settlement demand was made, and it took us 14 months to wind up with it. And that is a matter of record. So unable to point to actual policy language that requires an itemization of the different damage elements, the plaintiff was arguing that there is an applied covenant of good faith and fair dealing, or that it was a matter of reasonable expectations, and he could predicate count one on that basis. Okay. So first of all, Bernacci, a Seventh Circuit case, citing the Supreme Court case in Kramer, and Kramer is counsel of knowledges, is still the law 29 years later, Kramer rejected this theory because the covenant is a rule of construction. It does not create an independent cause of action, and it cannot supply terms to reach a result more beneficial to one of the parties. Plaintiff's reliance on reasonable expectations fares no better. The case law holds that reasonable expectations is considered only when the policy is ambiguous. There is nothing ambiguous about the policy. If we disagree on fault or damages, we take it to arbitration. That is the preferred method of resolution favored under Illinois law and the insurance code. The reasonable expectations doctrine just doesn't apply here. Now, when the parties disagree on damages and the issue was to be submitted to arbitration, the policy simply does not impose an obligation to adjust the claim within any set time limit. That's Bernacci, that's Lynn. Plaintiff could not use either a covenant of good faith and fair dealing or the doctrine of reasonable expectations to rewrite the insurance policy more to his liking. We ask the summary judgment and count one be affirmed. Second, okay, let's talk about section 155 and whether it can proceed on a standalone basis. When it's here, the plaintiff was paid every penny owed before the suit was filed. I'm quite sure that if we had not paid before the suit was filed and the case had gone to arbitration, he would be complaining that that was the basis for a 155. Kramer holds, and I know the panel is familiar with Kramer, but it holds that 155 is an extra contractual remedy to quote an action on the policy and presupposes an action on the policy. The action on the policy is not the 155 itself. It's a breach of contract claim. That's the action on the policy. There's nothing ambiguous about that. State Farm's payment of the claim before suit does not mean that he succeeded on an action on the policy. The arbitration was not on whether State Farm reached the policy. That's crucial. It's one of about five cases we cited in our brief on 155 as a standalone, not as a standalone claim. Now, admittedly, plaintiff relies on pre-Kramer cases with the exception of McGee. McGee was a 2000 case in Kramer's 1996, but those cases, including McGee, merely assumed that 155 provided an independent cause of action. Now, no less than five recent decisions, and we've discussed them in the brief. I don't know if it's Moles or Molas, M-O-L-E-S, Rodez, Prudhoe, Hoover, and from the Seventh Circuit, Wolf, have distinguished all those cases and hold that without a successful breach of contract claim, remember here that claim is based on some sort of theory to adjust and itemize damages before invoking arbitration, section 155 imposes no extra contractual liability for a standalone claim. And Rodez, in paragraph 27, I think it is, makes a very interesting and I think important point, and that is that the legislature has not amended section 155 for the last 29 years. And the Kramer interpretation of 155 has now become part of- Let me ask you a question.  What incentive does an insurer have to properly pay a claim, which is what he's talking about, once it knows that eventual payment, I mean, when it knows that exposure is going to pay? I mean, what he's saying is it just took too long. He hasn't approved that. But what is there, what incentives are there to prohibit what he's complaining about? Well, we have a regulatory scheme in Illinois, and I know he doesn't like the scheme, but that scheme is the expression of Illinois public policy. That scheme has certain sections of the insurance code, 154.6 and 154.7, and we have as well the insurance rules in, I think it's Title 50 of the administrative code. Can I ask a question? Yes. Do you have any idea how much the Illinois insurance industry pays its lobbyists? I have no idea, and I don't see how that could be part of the record. Do you have any indication during your long history as an attorney dealing with these cases, whether real people who buy policies have any lobbyists working for them? I think they have the- I mean, is there a policyholders lobby in the legislature? Better, the Illinois Trial Lawyers Association. Well, no, that's not, that is not necessarily better. I'm asking specifically if policyholders like this plaintiff are likely to be part of some lobbying effort to change or amend or fix or bring up to date something that's 30 years old. So, first of all, I mean, Justice Kuczynski, I think you do raise an interesting question, but it's not a- Well, you started it because you said, this has been the law and the way we've done things for 30 years. And I look at something that's 30 years old and say, gee, is it working so fabulously for both sides that it doesn't need to be changed? Or is it just so great for one side that nobody will dare change it because they're going to aggravate a powerful lobby? So- That may not have, that may be a rhetorical question. You may not have an answer to that. Well, I'm going to stand by the answer I had before, which is the Illinois Trial Lawyers Association represents plaintiffs. And they represent plaintiffs who are injured, who then have to sue their insurance companies. It's not a, I mean, policyholder, I can tell you, there is a policyholder group. And typically, and typically they represent big business that is seeking coverage from, you know, insurance companies or they want to change the law. I understand it's a rhetorical question. It may be beyond the facts of this case. But I don't think that you can simply assume that the Illinois Trial Lawyers Association is not, you know, is not able to represent plaintiffs. Okay, then I don't think that you can safely assume that something that hasn't been changed for 30 years that favors the insurance companies is necessarily the best thing going. Would have to, I think, just agree to disagree on, you know, what's going on here and who's who's in control of this process. But your counsel for the other side is called it regulatory capture. And I think anybody who's looked at these insurance cases for any amount of time has to wonder whether or not that might not be an accurate description. Understood that that's your position. And I think that our brief lays out what we think the law is. And it's always subject to change, always subject to change going forward. Now, the record to go to the other basis for summary judgment, we've already talked a little bit about the fact there's no standalone 155 claim. And that's been the law for a long time from the Supreme Court. But above and beyond that, the record shows a bona fide dispute based on a disagreement the parties had over whether the right shoulder injury was causally connected to the accident. State Farm had every right to get a second opinion from Dr. Hutchinson, who was an orthopedic surgeon. State Farm had the right under the policy to take the plaintiff's sworn statement. Dr. Hutchinson initially determined that there was no objective evidence of acute injury to the cervical spine, and that the right shoulder was not injured in the accident. Now, counsel's right, his opinion did soften over time as he acquired additional information. Remember, he's hired in September of 2020. The EU, the examination under oath takes place in February of 2021. He gets additional records from a primary care physician of the plaintiff that nobody knew about until he subpoenaed those records. And I'll be right up front and say that the imaging wound up being a mammogram instead of an MRI. Okay, we did investigate that. Eventually, he reassessed based upon new information, and within seven days, State Farm paid the claim. Again, I'm just astonished the plaintiff would say here that we would have a better defense if we didn't settle and if we went through the arbitration process. I mean, to me, that just makes no sense. Plaintiff did not show that his opinions were unreasonable or that State Farm was unreasonable to rely on those opinions. Under the case law, summary judgment is proper as long as the evidence in State Farm's possession created a genuine basis for dispute over the cause, nature, and extent of the injuries and the damages. Given the complexity of the medical causation issue and the need for expert testimony, the dispute between the two doctors was bona fide. And on this basis as well, summary judgment was proper on Clause 2. Third, plaintiff could not pursue an implied right of action under the insurance code and the administrative code. It is settled law, beginning with the Illinois Supreme Court, Vine Street Clinic, but there are plenty of cases that hold that a violation of the insurance rules in Title 50 of the administrative code does not give rise to a private right of action. Under the regulations, the Department of Insurance has the authority to enforce the code, and the proper remedy for a party who alleges a violation is to submit a complaint to the Department of Insurance. Counsel did that here, and he did it in Vernacci, and the director found that there was no basis to go forward to investigate. That did not give him standing to bring an implied right of action for her own benefit. Likewise, plaintiff had no implied right of action under Sections 154.6 and 154.7 of the insurance code. These sections give the Department of Insurance the authority to penalize improper claims practices, but persons cannot pursue their own damages. On that basis, the dismissal of Count 3 should be affirmed. I know that counsel has said a number of things today. I'm not going to try to chase down every last thing that he said to try to rebut it. We didn't hear anything about an argument about whether summary judgment was premature or that he had a 191B affidavit, anything like that. I'm not going to address any of the discovery. It's in the briefs. It's in the briefs, right. We're not here to have you hit everything. Anything else you want to say? But, you know, I would simply say that for all of the reasons in our brief and in the oral argument today, we ask you to affirm in its entirety if there are no further questions. Thank you for hearing us out today on a case that's important to us as well as to the plaintiff. Thank you. Mr. Simpson, a very brief rebuttal. OK, Judge, feel free to cut me off. I can go on forever, but I'm just going to hit a few points. And if you feel like I'm going on too long, feel free to let me know. I would just say this. So one of the things that they said is, well, all this stuff about itemized damages, itemized damages. I don't know where they got that. I mean, here's the thing. Itemized damages are what the Illinois Pattern Jury Instructions say are the damages that were available to my client. And more importantly, in the claims file, they have to itemize the damages. So I don't know this idea that somehow talking about itemized damages. What I said is they what we said is that they didn't adjust the claim. And that's not about itemized damages. It's about determining total damages and it's about determining liability. OK, none of something to this day. State Farm has never done in this case. They never made a statement about total damages and they never made a statement about liability. They just after a whole bunch of sitting on their hands and doing nothing, basically said we're going to pay this claim. And I would say in their own policy, they don't need to adjust a claim if they pay the full policy. And they did. But but but what 155 says that if there's unreasonable or vexatious delay that the plaintiff has all kind of remedies under 155. And that is a remedy for the breach. And that's what I what we alleged in count one.  Did you plead or argue this theory of partial breach down below? Well, I mean, I argued that the I'm not paying was a breach of contract. I think it's a specific question. I mean, yeah. In your in your complaint. I don't believe you make that argument. I make the breach. I make the breach of contract. But not correct. That is correct. That's what the question. OK, yeah. And here's what I'd say. If I replug that today, I would like it as a partial breach. I understand. I don't I don't. I don't think partial breach and breach of contract are material. Are you different? In other words, if you. But they are in certain circumstances. And particularly where there is no case in an insurance. We've talked about this with regard to. You may or may not be right, but that's not the case before us right now. So I'm not trying to cut you off, but you don't have much time. Is there anything else important you want to respond to? Yeah, well, in the Supreme Court case that talks about partial breach, the way it was pled was as a breach of contract. It wasn't pled as a partial breach. And then the Supreme Court dealt with the partial breach doctrine. So I think partial breach is part and parcel of breach of contract. That's my reading of the law. I don't know if the court thinks that that's a unique, different kind of. Of course, action. But that's not how I read the case law. So the other part of this, too, is. So the whole idea is to avoid arbitration. And force them to put their chips on the table. As far as whether or not they're going to challenge your evidence. And they're going to pay you the undisputed amount in 30 days. Under 919.50. So I think, you know, one of the things I said. You asked Justice Hyman about, you know. What keeps insurance companies in line in this case? And they said, well, there's all this regulatory action. Okay, great. It's never been enforced. Like 919.50 doesn't get enforced by the Department of Insurance. And neither does 154.6.  This idea that somehow. We have control over this situation. The legislature in the department. In those, in that rule and statute. Express a desire to have some kind of. Level the playing field so that this adhesion contract. That the plaintiff had nothing to do with writing is fairly. Enforced fairly adjudicated. That's not happening right now. And I think that the. The Illinois Department of Insurance should be ashamed. They're not enforcing their own rules. And I think the legislature would be shocked. To learn that they are, that their rules. Haven't been enforced in 54 years. So. You know, I disagree with his statement about the. That there was always a dispute about the shoulder. There just simply was. This wasn't that was never disclosed. And more importantly. They never changed his opinion. And then they decided to pay the policy anyways. This is just a made up dispute. It's not, there's no bonafide dispute here. There just never was in this case. I mean, if, if there's still a bonafide, if there wasn't. A bonafide dispute, it still exists. And then why did they pay it? They didn't pay it because they want to just hold on to plaintiff's money. And unlike counsel. I was actually representing my client. And he's the appellate counsel was what my point is. And this suggestion is somehow we delayed things. It's just untrue. I will say this. There was a dispute about signing a contract with ADR systems. And they wanted certain things in that agreement. That were contrary to the policy. In other words, they wanted us to agree. That we wouldn't go to the arbiters and seek one 55 damages. Okay. That there's, there's no law out there. And Tomasello supports the idea that we have an absolute right to seek that. So the idea that somehow any of these delay. It was caused by us. It's just not true. I mean, I produced my client within a month or two. When they finally got around to saying they wanted to take her death.  Last words. So here's what I'd say. I beg this court. I mean, this court can see from the record. What is going on with the adjusters that are actually in the trenches. Handling this, these claims. And what we know is they all testified that they don't know what Illinois. Bad faith insurance laws are. And the idea that council told you that somehow. Those rules create guardrails for a fair result. Is a complete fiction and fantasy. And it's about time that some court have a little courage. Step up, recognize an implied right to action. And basically try to level the playing field. So everybody gets a fair shot. We don't want anything special. We just want a fair shot. And that didn't happen in this case. And it doesn't happen in most cases. And we didn't agree to a $70,000 loan. And they would never have agreed to give us a $70,000 loan. And there should things should be fair. They're not just because they have $250 billion net worth. Doesn't give them car plush to roll over people's rights. Particularly people who they pay them a premium. Come to them. Give them a premium and pay them money. Once they cash your check, you have a right to have certain expectations from your insurance company. And they were not met in this case. Thank you very much, Mr. Simpson. Mr. Resus, we appreciate the hard work that you've put into this oral argument. And the excellent briefs that you prepared. We'll take this case under advisement and issue an order in the near future.